Gaston, J.
 

 On the first of May, 1830, William Rhem, late of the County oí Jones, duly executed his last will and testament, and therein, amongst other things, bequeathed as follows : “ I hereunto confirm the property I have heretofore given to my daughter Susan Kinsey, and one dollar to her, her heirs and assigns for ever.” The testator, after other specific bequests, gave all his negroes and all the residue of his property to his sons Melchor Rhem and William B. Rhem, to be equally divided between them, their heirs and assignsi for ever j and constituted the latter and Hardy Perry his executors; After the testator’s death, at the December Term, 1833, of Jones County Courts William B. Rhem, the defen
 
 *194
 
 dant, alone proved the will, and took upon himself the office of executor. At the September Term, 1838, of Jones Supe-nor Court, Joseph Kinsey and Susan his wife filed their petition against the said defendant, in which they set forth, that long previous to the intermarriage of the plaintiffs the deceased, William Rhern, gave unto the petitioner, Susan, his daughter, a negro child named Alice, and-upon their marriage repeated the said gift, and sent the said Alice with her to her husband’s house, where she afterwards remained until her death, being constantly recognised as the property of the petitioners. The petitioners further stated, that while Alice was thus in their possession, she gave birth to a child named Fan, and shortly afterwards died; that a short time before the death of the said William, the said negro girl, Fan, was permitted by the petitioners to go to the house of said William for a temporary purpose, and was there at his death, but was recognised by him as the property of the petitioners; that the saidjWilliam never did give unto the petitioner, Susan, any other property than the negro Alice ; that he made no deed of conveyance, but that he made similar parol gifts to his other children; and by his will confirmed this gift to the petitioner, Susan, and the other parol gifts to his other children. The petitioners further charged, that the defendant had taken possession of the said Fan, as the executor of the said William, and though often requested by them, refused' to deliver her, or to pay over the legacy of one dollar bequeathed by the will. The defendant answered the petition, and in his answer set forth that the petitioners intermarried in the year 1823; that previously to the marriage, the petitioner, Susan, who lived with her father, called Alice her negro, and upon the marriage Alice was sent home with her, and he has no doubt it was then the intention of his father to permit the petitioners to have the use of Alice’s labor, and at a suitableatime thereafter to make a title for her ; that Alice staid two years with the petitioner, Joseph, and, he being about to sell her, the deceased asserted his title to her and took her home, and that she died in his possession. The "defendant further stated, that, at the time of the intermarriage
 
 *195
 
 of the petitioners, Fan, the child of Alice, was about four years old ; that she was not sent with her mother, Alice, nor was she ever out of the possession of his testator until the day of his death ; that it never was the purpose of the testator to give the said Fan to the petitioner, Susan. The defendant further stated, that when Alice was taken back, a quarrel took place between the petitioner, Joseph, and his father-in-law, and that an alienation between them was the consequence — that they never had any intercourse thereafter —that the testator, in consequence, déclared his determination not-to give Alice or any other property to the petitioners, except the articles of furniture which he alleged were sent home with her when she married, and the gift of which and of which only was confirmed by his will. The defendant admitted that the testator had made parol or imperfect gifts of negroes to his other children, when they married, and confirmed these by his will, but insisted that in every such instance he distinctly named in the will the negroes so advanced. The defendant further stated, that, after the death of his father, he and his brother, Melchor Rhem, as residuary legatees, divided between them the negroes bequeathed to them, and that he had sold the said Fan, who had been included in his share of that partition. The defendant denied, that, previously to the filing of this petition, any demand had ever been made upon him by the petitioners either for the negro girl, Fan, or for the dollar; and that as to the said dollar, the defendant would at any time have paid the same to the petitioners, had he supposed the petitioners would have received it; that the petitioner, Joseph, was a wealthy man, and considering the circumstances of the quarrel between him and the testator, which continued to the testator’s death, and which probably influenced the testator in making so slight a provision for the petitioner’s wife, the defendant verily believed that an offer to pay it would have been regarded as an insult. The defendant, however, prayed leave to be permitted to pay the same into Court, with interest thereon from the death of the testator. A replication was entered to the answer, and, proofs being (aken on both sides,
 
 *196
 
 the cause was heard at the last Term of Jones Superior Court, when the petition was ordered tó be dismissed at the costs of the petitioners. From this decree they appealed to this court.
 

 The only .enquiry in this case is one of fact, whether the pegro Fan be, within the words and meaning of the testator, a part of the property he had theretofore given to his daughter Susan. In the
 
 legal
 
 sense of the term, it was not a part, because since opr act of 1806, (Rev. St. c. 37, s. 17,) a parol gift of a slave is void in law; but in the common acception of the term a slave may be given by parol, and a testamentary declaration affirming that gift would .clearly be effeclm al. Parol evidence cannot be .admitted to add to, or subtract from a testamentary disposition, but it is admissible to identify the things therein mentioned, and
 
 for that purpose,
 
 it was properly received in this case. In prosecuting our em .quiry we have rejected the testimony of Melchor Rhem, as that of an incompetent witness. Fan having been allotted to the defendant in the division made between him and the witness, the latter has an interest in maintaining the title of the former, as in case of recovery he would be liable to contribution. But, after rejecting the testimony of this witness, we think the preponderance of the evidence is decidedly a-, gainst the elaim of the petitioners.
 

 It is not deemed necessary to recapitulate that evidence minutely. We hold that it clearly shews that it was
 
 the
 
 the custom in the family
 
 oí
 
 the old gentleman for his daughters to claim each a negro as hers; that this custom was well known to the father; that the negroes so severally claimed were called the property of the respective claimants; and that, upon the marriage of any of his daughters, “ her negro,” as it was called, was sent with her to the house of her husband, together with such articles of household'furnir to re as she was accustomed to use as her own. The negro Alice, before the birth of Fan, was called in the family Sm san’s, and, after the birth of Fan, she as well as her mother Alice were called Susan’s negroes. When the petitioner Susan intermarried with the petitioner Joseph, she carried
 
 *197
 
 Alice with her and also a bed and furniture and some other household articles of little worth. Fan did not go, because Mrs, Rhem wished her to stay, and not because of any opposition on the part of Mr. Rhem. In two or three years
 
 r. '
 
 . ... , , ‘ . . ... , after the marriage, Alice was taken back by him and remained in his possession until her death. About the same time) the quarrel mentioned in the answer took place, and from that time up to his death, Alice and Fan, the former as long as she lived and the latter continually, were held and claimed by him as his property. Upon these facts we should feel ourselves constrained to hold, that Fan is not identified to be a part of the property, described by the testator in 1830, as theretofore given to his daughter ¡Susan.
 

 But there is evidence furnished by the will itself, which strongly confirms this conclusion. In every other bequest in the will, where the testator confirms previous gifts to his children, he names the negroes so given. Thus in the first clause, his language is, “I hereunto confirm the property I have heretofore given to my daughter Mary J. Perry,
 
 including the negro xooman Rose with her increase
 
 and one" dollar to her, her heirs and assigns forever.!’ So in the second, “I hereunto confirm the property I have heretofore given to my daughter Hannah Perry,
 
 including the negro woman Raney with her
 
 increase, and one dollar, to her, her heirs and assigns forever.” So in the third, “I hereunto confirm the property I have heretofore given to my son Joseph Rhem,
 
 including three negroes Grace, Sail and Mary with their increase,
 
 and one dollar to him, his heirs and assigns forever.” And in the fifth, which immediately succeeds the one now under consideration, his language is, “I hereunto confirm the property I have heretofore given to my daughter, Elizabeth Loftin,
 
 including two negroes Lydia and Peggy with their
 
 increase, and one dollar, to her, her heirs and assigns forever.” When in the 4th clause he departs from the settled phraseology observed in the others, simply in omitting to name any negroes as given, the inference is scarcely to be resisted, that in his contemplation none were given to his daughter Susan, '
 

 
 *198
 
 VVe have no doubt that the negro Fan was the sole matter of this suit, and, therefore, hold that the decree below is substantially correct. In form, however, it ought to be affirmed on'y so ^ar as ^ dismisses the petition in regard to the said negro with costs, and be reversed so far as it claims the legacy of one dollar; and the petitioners are to have a decree therefor and with interest thereon from the death of the testator, (say the 1st of December, 1833,) which the defendant has consented to pay. Rut the petitioners must pay the costs of this Court also.
 

 Per Curiam, Decree accordingly.
 

 
 *201
 
 €3ÁSEg§ ARGUED AND DETERMINE» IN THE SUPREME COURT OF Er@IB®E JUNE TERM, 1842.