Ruffin, C. J.
 

 It is extremely probable from the admissions of the parties and the circumstances of the case, that the alleged mistake really took place in writing this will; and the Court would gladly correct it, if it could be done consistently with the law. But it is manifestly impossible to do so upon the basis of any guide furnished by the will; and, therefore, that, if done at all, it must be exclusively on extrinsic evidence of an intention to give a negro, who is not given by any words in the will. That would in truth be to strike one word out of the will, and insert another in the place of it by parol proof; which cannot be done without introducing a multitude of mischiefs, with which the privafe hardship and inconvenience sustained by these parties can bear no comparison. It has' long been settled, that written instruments, whether deeds or wills, are to be construed upon their own terms. At least, there must be
 
 enough in them,
 
 in respect both to the person to take, and the subject to pass, to enable the Court to say that the person
 
 does
 
 také, and the thing
 
 does
 
 pass by the instrument itself. There are, indeed, cases of ambiguity of description, in which résort may be had to evidence in aid of the will; for example, to show which' person or thing is meant, when there is in the will a sufi ficient description, to which the evidence may fit the person or thing. That is the cate when two things or persons come completely within the description; as two white acres, or two cousin Johns. So it is also, if the person or thing be described in more particulars than one,
 
 *395
 
 some of which are true and some false ; then if enough remains, after rejecting the parts that prove to be false, to identify the donee or the subject, the instrument shall be effectuated. In all those cases there is upon the face of the will no ambiguity, and it arises only when the description comes to- be applied; then it is found that there is an uncertainty, which- of two persons or things was meant, which are within the words, or whether a thing or person was meant who is correct
 
 ly
 
 described in some particulars but not in others. But, clearly, if a will describe a person or thing by many particulars and one is shown, who comes up-to the description in every particular, it would not be competent to prove by witnesses, that the testator did not mean that, but another, though the latter be not within the description,’ and to give effect to the will, as if the description were altered in the instrument itself. That would be to. make the will upon the evidence. So in like manner, when the will fully describes a person or thing, whether by many or few particulars, it cannot be competent toreceive such evidence, though nothing be found to answer the description ; for, to pass another thing, or to pass the thing to another person, than that described
 
 in the
 
 will, would be’to give operation to. the will over a thing or in favor of’a person not mentioned in the- will at all — in effect, to fill a blank in it, or rather, to make a blank by striking out and then filling it in another manner. That caniidt be done upon any safe principle. In this case there aré two terms of description, and two only, of the subject of the bequest. He is said to be named “Aaron” and to b.e a “negro.”' The latter is so indefinite as to designate mo one in particular. A gift of eight negroes would, indeed, be good, as a general legacy of eight slaves. But the present is a specific gift, and the question is, who are the very negroes given. In such a case the term “negro,” designating merely the
 
 status personae,
 
 cannot be con
 
 *396
 
 strued to be a gift of any individual negro, and therefore cannot be applied to one by evidence. That, then, is the case of a description by a single particular, that of the name ; and there is no negro of that name. One would think, that there is but one principle applicable to sucha case ; which is, that the gift must fail, because there js nothing for it to operate on It is no case of ambiguity. It would be, if there were two Aarons; and, then, it would be admissible to show, which of the two was
 
 the
 
 Aaron. But the attempt is to prove, that the testator did not mean to give any Aaron at all, but a different person altogether ; namely, Lamon. There is an old case, Beaumont v.
 
 Fell,
 
 2 Pr. Wms. 140, that, seems to go far to support the proposition, if it be law. A legacy was given to
 
 Catherine Earnley,
 
 and, there being so such person, it was decreed to
 
 Gertrude Yardly,
 
 upon evidence t'hat she was the person intended, andthatthe testator frequently called her by the nick-name of
 
 Gatty,
 
 which the writer of the will' mistook for
 
 Katly.
 
 It is to be observed, in the first place, that the master of the Rolls put the decision upon the right to receive such evidence by the civil law, in res;pect to personal legacies, and admilted, in terms, that it could not be heard, by the common law or the statute of frauds, as to a devise of land ; because, said he, a devise must be in writing, “and there would be no writing to entitle
 
 Gertrude Yardly,
 
 had this been a devise of land That admission must be sufficient at this day to destroy the authority of the case, as a decision upon the construction of the will; since it is certain, that now the terms of a bequest can no more be altered by parol thau those of a devise. Then it is to be observed, that the report is explicit, that the judgment was put upon the ground, that there was no writing to entitle the person to whom the legacy was bequeathed ; and therefore she took it by force of the extrinsic proof entirely, saving only that the will showed that the testator meant to give
 
 *397
 
 it to some person. That is a proposition, opposed to every principle for the construction of writings, or establishing their superiority in the scale of evidence over the testimony of witnesses. It has moreover, not been followed by any similar decision; but there have been many directly opposed in principle to it. There is, indeed, a single case in this Country, which, upon the authority of
 
 Beaumont
 
 v.
 
 Fell,
 
 ruled the point in accordance with
 
 it,
 
 in a case somewhat like that before the Court. A person, owning a considerable number of slaves, bequeathed in his will by name exactly the number he had, and among the bequests there was one of fifteen slaves to his wife, and two of the number were designated by the name of
 
 Phillis,
 
 whereas the testator had but one
 
 Phillis
 
 and he had a man,
 
 Phillip,
 
 not mentioned in the will. It was held, that the wife took
 
 Phillip
 
 in the place of one of the women named
 
 Phillis. Tudor
 
 v.
 
 Terrell, 2
 
 Dana. Kentucky Rep. 47. That case, indeed, differs from ours in this, that here there were two negroes in number more than are named in it; and the Court in Kentucky greatly relied on the co incidence in the number. Certainly, 'that was a strong circumstance, if one person or subject can be substituted for another, which is fully described, to show, that the Court could in that case probably hit on the right one, to be substituted. But the difficulty is to lay down any principle, on Which the terms of the will can be thus dealt with, and one description of the thing substituted for another. The Court thinks it cannot be done. In all the cases hitherto decided in this State, there was enough, on the face of the will, to identify the subject after leaving out every part of the description, which was inappropriate. It was so in
 
 Proctor
 
 v.
 
 Pool,
 
 4 Dev. 370; in
 
 Simpson
 
 v.
 
 King,
 
 1 Ire. Eq 11; and in
 
 Eringhaus
 
 v.
 
 Cartwright,
 
 8 Ire. 39; in the latter of which cases the rule is stated as we understand
 
 it, and
 
 applied. And as understood and applied there, it is deduced not
 
 *398
 
 only from the text writers, but from judicial determinations of the highest respectability. Thus in
 
 Thomas
 
 v.
 
 Thomas,
 
 6 T. R. 691, Lord Kenyon said, that the sense of the maxim,
 
 falsa demonstratio non nocet
 
 was, that the
 
 falsa demonstratio
 
 should be superadded to that which was sufficiently certain before; for, there must be con.,
 
 stat de persona,
 
 and if to that be added an inapt description, it will avoid the devise. Thus in
 
 Goodtitle
 
 v.
 
 Southern,
 
 1 M. & S. 299, it was held, that a clause “of all my farm and lands called
 
 Trognes farm,
 
 now
 
 in the
 
 occu
 
 jiation of A. C.”
 
 passed not only such parts of Trognes farm as were occupied by A. C., but also those occupied by other persons; because the name identified it, and the will gave
 
 all
 
 of it, and those general terms were not to be cut down by the subsequent inconsistent description. But in
 
 Doe
 
 v.
 
 Oxender,
 
 3 Taun. 147, and
 
 Doe
 
 v.
 
 Chichister, 4
 
 Dow. P. C. 65, it was held, that a devise of “my estate of Ashton,” or “my estate at Ashton” could not be extended by evidence so as to take, in addition to lands in Ashton, lands in an adjoining parish. In a more recent case, which, indeed, is in point with the present, that doctrine was solemnly re-affirmed. A testator devised “all my real estates whatsoever, situtate in the county of Limerick in the city of Limerick.” He had a small real estate in the City, but none in the County, of Limerick. He, however, had other real estates in thr County of Clare ; and the question was, whether it could be shown by parol that the testator intended to dispose of the lands in Clare, and that the County of “Limerick” had been by mistake written for the County of “ Clare.” It was held by the Vice Chancellor, that it was competent to hear the evidence, and an issue was ordered to be tried at law. But upon an appeal, the Lord Chancellor, assisted by Chief Justice Tindal and Chief Baron Lyndhurst, reversed the decision, upon the ground, that it was not a case of latent ambiguity, because there were
 
 in the will
 
 no
 
 *399
 
 words describing lands to which the parol evidence could be applied so as to embrace within it the lands in Clare.
 
 Miller
 
 v.
 
 Travers,
 
 8 Bing. 241. The opinion was given by Chief Justice Tmdai, and is a very able one, discussing both the principle and the cases, and the result was concurred in by all three of the Judges. For the same reason it is impossible, without contradicting the will, to make “Aaron” mean “Lamon,” there being no other description but the name ; unless, indeed, it could be shown, that
 
 Lamon
 
 was sometimes called
 
 Aaron,
 
 so as to be known by both names — which is not pretended ; and so, likewise, as to
 
 Pike
 
 and
 
 Pite.
 

 The Court, therefore, holds, that the slaves Lamon and Pite are not specially disposed of in the will, but, with the two others not named, fall into the residue.
 

 Two points are made upon the dispositions in favor of Mrs. Dew ; which are first, whether the dispositions are to the separate use of the wife ; and secondly, whether the gift is exclusively to Mrs. Dew or to her and her children. Upon the first, the Court is of opinion in the negative. It may be inferred from the will, that the testator had not much confidence in the prudence or capacity of Dew for managing the property, and that he had a vague purpose not to trust the property in his hands, but secure it in some way for his daughter. But there is not enough in the will to amount to the plain exclusion of the husband, which the law' requires, before he can be deprived of his marital rights.
 
 Rudisill
 
 v.
 
 Watson, 2
 
 Ire. Eq. 430. The Court likewise holds, that the children took no estate under the will. The words of gift respect the wife alone, as the sole donee. It is true, the testator says he wishes the land rented and the negroes hired, if they do not make a support; but if they can, he wishes the negroes to work on the land “for the support of her, the daughter, and her children.” But, if the negroes should be hired and the land rented, he does not give the proceeds to the daughter
 
 *400
 
 and her children, for division between them ; but they go, as arising from the mother’s land and negroes, to her. The words, “for the support of her and her children,” under those circumstances, express only what the testator supposed would be the appropriation of the profits of the estate by the mother, and were not intended to defeat or in any degree to transfer the estates and money, just given to the daughter, from her to her children.
 

 Thedefendants, Dew and wife, set up a claim to Lamon and Pite under the reservation of two negroes'to wait on her — suggesting that the two thus reserved are those two and that for that reason they were not mentioned by name in the will. But it is clear, that the negroes thus reserved are two of those just before specially bequeathed to Mrs. Dew, and are excepted out of the direction for hiring out the negroes, because they would, at all events, be needed by her as domestic servants.
 

 Per Curiam.
 

 Declared accordingly.