ALFRED METCALF, Executor, *vs.* JOHN SWEENEY *et als.*

An executor was directed by his testator's will "to pay over to such servants as shall be in my employ at my death, the sum of twelve thousand dollars."

*Held,* that the word "servants" in this provision did not include a woman employed intermittently by the testator to help his regular servants at irregular intervals, though she was actually working for him when he died.

BILL OF INTERPLEADER.

*January* 28, 1891. DURFEE, C. J. The late Henry J. Steere died October 28, A. D. 1889, leaving a will dated January 2, A. D. 1889, subsequently proved, the third clause of which is as follows: "I direct my said executor to transfer and pay over to such servants as shall be in my employ at my death, the sum of twelve thousand dollars in such manner that each of said servants shall receive equal portions of said sum." There were six persons employed by Mr. Steere regularly and continuously as his servants, when he died. That they are entitled to share in the bequest is not denied. They claim to be solely entitled. This is contested by a Mrs. Annie Crosby, who claims to be entitled equally with them.

Mrs. Crosby served, not continuously, but sometimes two days a week from week to week, as laundress; occasionally more than two days a week; sometimes at irregular intervals, at jobs of house cleaning and the like; and sometimes her services were intermitted for months. The most trustworthy testimony as to the extent of her employment comes from a Mrs. Arnold, housekeeper for Mr. Steere, who testifies from memoranda made for purposes of payment. She testifies that Mrs. Crosby worked 37 days in 1885, 131 in 1886, 65½ in 1887, 34 in 1888, and 35 in 1889; that, as a rule, she was not employed more than two days a week, and then to help the regular servants. She appears to have been a woman in whom

trust was reposed.   She was trusted to go to Mr. Steere's country house at Nayatt in advance of the household, to open it and put it in order for summer occupancy; and one summer she was intrusted with the city house, having charge to look after it.   She was at work at Mr. Steere's house in the city at the time of his death, and was present when he died.

The other servants contend that Mrs. Crosby is not entitled to share with them in the bequest, because she was not regularly and continuously in Mr. Steere's employ.   They cite *Townshend* v. *Windham*, 2 Vernon, 546.   There the Duke of Bolton by his will bequeathed as follows: "Item.   I give and bequeath unto such of my servants as shall be living with me at the time of my death, one year's wages;" and the Lord Keeper, holding that stewards of courts were not entitled, said: "Stewards of courts and such who are not obliged to spend their whole time with their master, but may also serve any other master, are not servants within the intention of the will; but I will not narrow it to such servants only that lived in the testator's house, or had diet from him." The point of this decision was, not that stewards of courts were not servants, within the legal meaning of the word, when employed, but that they were not servants "within the intention of the will," because they were "not obliged to spend their whole time with their master," but might "also serve another master." The case is clearly in point for the servants here who cite it.

The counsel for Mrs. Crosby cites *Bulling* v. *Ellice*, 9 Jurist, 936, where a farm bailiff was held to be a servant within the meaning of a will by which the testator gave one year's wages to each of his servants in his service at his death, who should have lived with him five years.   The bailiff had been in the testator's service twenty-eight years, living rent free on the home farm, receiving a yearly salary, and being all the time in service, though with his master's permission he took pupils to instruct in agriculture.   The case seems to us to be entirely consistent with *Townshend* v. *Windham*, since the bailiff did spend his whole time in his master's service.

We do not doubt that Mrs. Crosby was, in the legal sense of the word, Mr. Steere's servant while she was actually rendering service for him at either of his houses; but the question is, whether

she was such within the meaning of the will; *i. e.,* to use his own words, a servant " in my employ at my death." It appeared in evidence that Mrs. Crosby had an assistant, hired in to help her in the work she was doing at the time of Mr. Steere's death. Such assistant was for the time as much Mr. Steere's servant as she; but the assistant makes no claim to share in the bequest, and her claim could not be allowed if she did. Why could it not be allowed? Because she was not then a servant in Mr. Steere's employ within the intention of his will, because the words " such servants as shall be in my employ at my death" import, by clear intendment, by reason of their testamentary character, something more than casual employment for a day or a job; for, when we go back in thought to Mr. Steere's act, and the nature of his act, when he wrote those words, we see that he must have had something else in mind, namely, a more permanent service. The question is, whether the service rendered by Mrs. Crosby comes up to the requirement. We are far from putting her on a footing with the person just referred to. There are many considerations that weigh in her favor. But while we feel the force of them, our minds still stop short of the conclusion that she is one of those who are entitled to share in the bequest. It seems to us that the service rendered by her lacks the continuity, the fixity, and permanence of relation, that are needed to give validity to her claim.

Our decision is that she is not entitled to share in the bequest.

*Charles P. Robinson,* for complainant.

*George J. West,* for respondents, Crosby and wife.

*Edwin D. McGuinness & John Doran,* for the other respondents.