FRANK SHOUP v. AMERICAN TRUST COMPANY, a Corporation, Executor AND Trustee of the Estate of CURTIS B. JOHNSON, Deceased, GEORGE LEE, S. M. LEE, JR., and HARRY LEE.

D. WATSON SMITH v. AMERICAN TRUST COMPANY, a Corporation, Executor and Trustee of the Estate of CURTIS B. JOHNSON, Deceased, GEORGE LEE, S. M. LEE, JR., and HARRY LEE.

C. W. WALLACE v. AMERICAN TRUST COMPANY, a Corporation, Executor AND Trustee of the Estate of CURTIS B. JOHNSON, Deceased, GEORGE LEE, S. M. LEE, JR., and HARRY LEE.

(Filed 27 March, 1957.)

**1. Wills § 34b—**

A bequest of a designated sum to all persons who had been employed by testator's newspaper for a specified number of years, *is held* to include part-time employees regularly reporting for work each Saturday to perform a recurring job necessary in the issuance of the Sunday paper, even though they also had other employment. The distinction between "casual employees" and regular part-time employees, pointed out.

**2. Wills § 39—**

While ordinarily extrinsic evidence is admissible to identify persons embraced within a class to whom a devise or bequest has been made, such evidence is not competent when the language of the will is not ambiguous.

APPEAL by defendants from *Sharp, Special Judge,* October Term 1956 of MECKLENBURG.

These are three civil actions commenced in July 1952, individually by Frank Shoup, D. Watson Smith and C. W. Wallace against American Trust Company, a corporation, executor and trustee of the estate of Curtis B. Johnson, deceased, to have themselves adjudicated legatees under the will of Curtis B. Johnson and to have their claims in the amount of $1,000 each proved to be valid and proper claims. The executor and trustee filed answer in each case denying the claims of the respective plaintiffs. Subsequently, George Lee, S. M. Lee, Jr., and Harry Lee, who are the residuary legatees under the will of Curtis B. Johnson, were ordered to be made additional parties defendant in each of the three actions. These additional parties defendant filed an answer in each case. The cases were consolidated for trial and were tried before Sharp, Special J., and a jury at the 22 October 1956 Special Term of the Superior Court for Mecklenburg County.

Curtis B. Johnson of Charlotte, North Carolina, died on 6 October 1950. For many years prior to his death, he was the publisher of *The Charlotte Observer* and president of The Observer Company. On his death Mr. Johnson left a holographic will dated 9 April 1947 making,

among others, the following bequests: "To all employees of the Charlotte Observer who have been with the paper for twenty years or more I direct that they be paid One Thousand Dollars ($1,000.00) each and all of those who have been with the paper for ten to twenty years, ($500.00) Five Hundred Dollars each."

The plaintiff Smith worked regularly each week in the mail room of *The Charlotte Observer* for more than thirty years prior to the death of Curtis B. Johnson. Plaintiffs Shoup and Wallace worked regularly each week in the mail room of *The Charlotte Observer* for more than twenty years prior to the death of Curtis B. Johnson.

The duties of the plaintiffs consisted of assembling sections of the Sunday and special editions of *The Observer,* including comic sections and other material to be included in such editions, and in "jogging" the papers together and stacking them in bundles for distribution. This was an essential task, without which the paper could not have been gotten out and distributed satisfactorily.

All of the plaintiffs reported regularly for work, without notice, each Saturday and worked Saturday night and until early Sunday morning in getting out the Sunday edition of *The Charlotte Observer.* In addition thereto, they were called from time to time to do extra work in getting out special editions of the paper.

The plaintiffs were not full-time employees of *The Charlotte Observer* but were regular employees, working each Saturday night and Sunday morning. Smith began working for *The Charlotte Observer* in 1919, and was supervisor over the men in the mail room from 1940 to 1950, and would average working from eleven to twelve hours each week; he was receiving for his services an annual remuneration of between six and seven hundred dollars. At the time of Mr. Johnson's death this plaintiff had from fifty to fifty-five men working under him in the mail room. Shoup began working for *The Charlotte Observer* in 1929; he usually reported for work at 10:00 o'clock on Saturday night and got off around 4:30 or 5:00 a.m. on Sunday; his remuneration, since he returned from the Army in 1945, averaged about ten or twelve dollars per week. Wallace began working for *The Charlotte Observer* in 1929, and usually reported for work about 5:00 o'clock Saturday afternoon and would work until 5:00 or 5:30 o'clock Sunday morning. He was paid approximately five hundred dollars per annum for his work for The Observer Company.

The plaintiffs received the paper at half price, which was the regular employee rate; they were given a Christmas bonus each year based upon the length of their service with *The Charlotte Observer;* were designated as employees on the official records of *The Charlotte Observer,* and had social security and withholding deductions made from their weekly pay checks at *The Observer.*

Plaintiffs had other jobs during the week but such jobs did not interfere in any way with their work at *The Observer*.

During World War II, while plaintiffs Shoup and Wallace were in service, their names were carried on the Honor Roll of *The Charlotte Observer* on the editorial page, along with the names of full-time employees.

At the close of all the evidence, the court being of the opinion that this was not a matter for the jury, held as a matter of law that the plaintiffs are entitled to recover and entered judgment accordingly. Defendants appeal, assigning error.

*Carswell & Justice and B. Kermit Caldwell for plaintiffs.*

*Helms & Mulliss and John D. Hicks for American Trust Company.*

*Taliaferro, Grier, Parker & Poe and Covington & Lobdell for defendants S. M. Lee, Jr., and Harry Lee.*

*Cochran, McCleneghan & Miller for defendant George Lee.*

DENNY, J. The appellants seriously contend that the plaintiffs, being only part-time help, were not "employees of *The Charlotte Observer*" within the meaning of the will of Curtis B. Johnson and, therefore, the trial court erred in ruling that plaintiffs are entitled to legacies under the provisions of his will, citing Schouler on Wills (5th Ed.), Vol. 1, section 566a; Page on Wills, Lifetime Edition, Vol. 3, section 1035; Rood on Wills, section 460; *Metcalf v. Sweeney*, 17 R.I. 213, 21 A. 364, and *In re Will of Johnson*, 233 N.C. 570, 65 S.E. 2d 12.

It is stated in the above cited section of Schouler on Wills: "A devise or legacy is not unfrequently given to a servant or servants of the testator. Where a gift is made to such as may answer that description, and without identifying particular persons as the objects of one's bounty, courts incline to limit its benefit if not to strict 'household' servants, at least to such as spend their whole time in the master's employ; not extending the gift, in its scope, to persons who come back and forth for casual employment and work also for others."

The cited section of Page on Wills contains the following language: "A gift to employes or servants is a gift to those who are employed with some degree of regularity and continuity. It does not include those who do merely casual work for the designated employer. A gift to 'such servants as shall be in my employ at my death' does not include persons who were hired a day or so at a time to assist the regular servants."

Section 460 of Rood on Wills states: "Gifts to servants, unexplained, include only those directly and regularly employed."

The case of *Metcalf v. Sweeney*, *supra*, involved the interpretation of a provision in the will of one Henry J. Steere, reading as follows: "I

direct my said executor to transfer and pay over to such servants as shall be in my employ at my death the sum of twelve thousand dollars in such manner that each of said servants shall receive equal portions of said sum."

There were six servants employed by the testator regularly and continuously at the time of his death. Mrs. Annie Crosby claimed to be entitled equally with the six. The opinion recites the following with respect to Mrs. Crosby's employment: "The most trustworthy testimony as to the extent of her employment comes from a Miss Arnold, housekeeper for Mr. Steere, who testifies from memoranda made for purposes of payment. She testified that Mrs. Crosby worked 37 days in 1885, 131 in 1886, 65½ in 1887, 34 in 1888, and 35 in 1889; that as a rule she was not employed more than two days a week, and then to help the regular servants."

Upon this evidence, the Court held: "It seems to us that the service rendered by her lacks the continuity, the fixity and permanence, of relation that is needed to give validity to the claim. Our decision is that she is not entitled to share in the bequest."

Likewise, the appellants here, in support of their contention that these plaintiffs were not employees within the meaning of the provisions of the will of Mr. Johnson, recite the following statement from the opinion in *In re Will of Johnson, supra:* "The solution of the problem is found in the expressed purpose of the testator. His intention is his will. This intention is to be gathered from the general purpose of the will and the significance of the various expressions, enlarged or restricted according to their real intent. A thing within the intention is regarded within the will though not within the letter. A thing within the letter is not within the will if it is not also within the intention."

In our opinion, the foregoing authorities do not support the appellants' contention in light of the facts before us. It is clear that *Metcalf v. Sweeney, supra,* as well as the textbook authorities cited, support the view that the servant or employee should be excluded where the employment was casual, but included where there was continuity and permanence of employment. Therefore, it becomes pertinent and important to see what is meant by "casual employment." Black's Law Dictionary, 2nd Edition, page 288, defines "casual" in this connection as meaning "occasional; incidental; happening at uncertain times; not stated or regular." In the case of *Van Nuys v. Levine,* 11 N. J. Misc. 309, 165 A. 885, the Court defined as "casual employment," employment for "a particular job which is not to be continued at regular or recurring intervals." In *Dobrich v. Pittsburgh Terminal Coal Corp.,* 145 Pa. Super. 87, 20 A. 2d 898, the Court quoted with approval from the case of *Cochrane v. William Penn Hotel,* 140 Pa. Super. 323, 13 A. 2d 875, affirmed 339 Pa. 549, 15 A. 2d 43, the following: "Applying it

(casual) as practically as possible to the subject of employment, it may be said in general that if a person is employed only occasionally, at comparatively long and irregular intervals, for limited and temporary purposes, the hiring in each instance being a matter of special engagement, such employment is casual in character. On the other hand, even though an employment is not continuous, but only for the performance of occasional jobs, it is not to be considered as casual if the need for the work recurs with a fair degree of frequency and regularity, and, it being thus anticipated, there is an understanding that the employee is to perform such job as the necessity for it may from time to time arise." Likewise, in *Flynn v. Carson*, 42 Idaho 141, 243 P. 818, the Court held that regular recurring employment, though only on Saturday nights, of an extra bus trip, is not a "casual employment." Moreover, the above quotation from Page on Wills contains the statement that "a gift to employes or servants is a gift to those who are employed with some degree of regularity and continuity."

In the case of *Johnson v. Hosiery Co.*, 199 N.C. 38, 153 S.E. 591, this Court, in discussing what is and what is not "casual employment," quoted with approval from the opinion in *Hoffer Bros. v. Smith*, 148 Va. 220, 138 S.E. 474, the following: "The test is the nature of the employment and not the nature of the contract. An employment cannot be said to be casual where it is in the usual course of the trade, business, or occupation of the employer. But it is casual when not permanent nor periodically regular, but occasional or by chance, and not in the usual course of the employer's trade or business." *Hunter v. Peirson*, 229 N.C. 356, 49 S.E. 2d 653; *In re Monroe, Exrs.*, 132 Misc. Rep. 279, 229 N.Y.S. 476; *Cox v. Brown*, 227 Mo. 157, 50 S.W. 2d 763. *Cf. Raines v. Osborne*, 184 N.C. 603, 114 S.E. 846.

The facts revealed by the record on appeal in the instant case lead us to the conclusion that, while these plaintiffs had not been full-time employees of *The Charlotte Observer* for twenty years at the time of the death of the testator, Curtis B. Johnson, nevertheless, they had been with the paper as regular and continuous employees of *The Observer* for that period of time and that their employment was in no sense casual. It is conceded by all parties that the time spent in the military service by any employee of *The Observer*, during World War II, should not be considered in ascertaining the period of employment with *The Observer*. Consequently, we hold that the plaintiffs are entitled to the legacies bequeathed "to all employees of *The Charlotte Observer* who have been with the paper for twenty years or more." We think these plaintiffs come within the letter and the intention of the testator when the language used by him is given its natural and ordinary meaning. Furthermore, we find nothing in the language used that supports the view that the testator intended to limit the benefits

to "all employees of The Charlotte Observer who have been with the paper for twenty years or more" to full-time employees only. *Marks v. Thomas,* 238 N.C. 544, 78 S.E. 2d 340; *Trust Co. v. Waddell,* 237 N.C. 342, 75 S.E. 2d 151; *Bank v. Phillips,* 235 N.C. 494, 70 S.E. 2d 509.

The appellants are relying on certain extrinsic evidence introduced by them in the hearing below, among which was a form letter sent out over the facsimile signature of Mr. Johnson to the regular full-time employees of The Observer Company in December 1949, more than 2½ years after he had executed his will, to show his intent in connection with the use of the word "employees." The appellants contend the letter shows clearly that Mr. Johnson did not consider these plaintiffs as employees. On the other hand, the appellants assign as error extrinsic evidence introduced by the plaintiffs which tend to show The Observer Company and Mr. Johnson recognized them as employees of *The Observer.*

Ordinarily, extrinsic evidence is admissible to identify persons embraced within a class to whom a devise or bequest has been made. However, in the absence of ambiguous language in the will, extrinsic evidence, either parol or written, may not be admitted "to vary, contradict, or add to the terms of the will, or to show a different intention on the part of the testator from that disclosed by the language of the will, . . ." 57 Am. Jur., Wills, section 1040, page 674; *Field v. Eaton,* 16 N.C. 283; *Reeves v. Reeves,* 16 N.C. 386; *Blacknall v. Wyche,* 23 N.C. 94; *Kinsey v. Rhem,* 24 N.C. 192; *Barnes v. Simms,* 40 N.C. 392, 49 Am. Dec. 435; *Thomas v. Lines,* 83 N.C. 191; *Wooten v. Hobbs,* 170 N.C. 211, 86 S.E. 811; *Trust Co. v. Wolfe, ante,* 535, 96 S.E. 2d 690, and cited cases; Anno.—Will—Construction—Extrinsic Evidence, 94 A.L.R. 26.

The remaining assignments of error, in our opinion, present no prejudicial error. The judgment of the court below will be upheld.

Affirmed.