IN RE KLEIN'S ESTATE.   KLEIN ET AL., APPELLANTS, *v.*
FRASER ET AL., RESPONDENTS.

(No. 2,349.)

(Submitted January 19, 1907.   Decided February 14, 1907.)

(88 Pac. 798.)

*Probate   Proceedings—Wills—Interpretation—Distribution   of
· Estate—Beneficiaries—Appeal—Executors—Law of the Case.*

Probate Proceedings—New Trial—Appeal—Review.
  1.   In a proceeding had to determine the rights of a large number of
  persons claiming to be legatees under a will, and where the executor
  and certain of the claimants, adjudged to be entitled to share in the
  distribution of the estate, moved for a new trial of the issues found in
  favor of certain other claimants, *held*, that, under section 2841 of the
  Code of Civil Procedure the aggrieved parties may move for a new
  trial and appeal from an adverse ruling, and that the argument that
  on account of the complications likely to arise in the district court if
  a retrial of part of the issues were granted, the supreme court should
  not review the order refusing a new trial, is of no merit.
Same—Appeal—Judgments or Orders.
  2.   Under subdivision 3 of section 1722, Code of Civil. Procedure, as
  amended (Laws, 1899, p. 146), an appeal may be taken from a part
  of an order or judgment decreeing certain persons to be entitled to
  share in the distribution of an estate under a will, such an order not
  being a "final" judgment.
Same—Appeal—From "Part" of Judgment—Law of the Case.
  3.   Where a motion to dismiss the appeal of an executor and certain
  legatees from that portion of a "judgment," rendered in a proceed-

ing had under sections 2840-2842 of the Code of Civil Procedure, declaring certain other claimants to be also entitled to share in the distribution of an estate under a will, based on the ground that an appeal does not lie from a part thereof, was denied upon consideration of exhaustive briefs of counsel, the determination of the question will be deemed the law of the case on its submission on the merits.

#### Same—Appeal—Denial of Motion to Dismiss—Law of the Case.

4. The denial of a motion to affirm an order of the district court, in a proceeding under sections 2840-2842 of the Code of Civil Procedure, refusing a new trial to an executor and certain of the legatees under a will, of the issues found in favor of a number of other claimants to shares of an estate, which motion was based on the grounds that the notice of intention to move for a new trial had not been served on all the parties interested, that the notice was joint and several, and that the executor was one of the moving parties, whereas he has not the right of appeal, will be considered the law of the case, as to the reasons urged in the motion, upon final determination upon the merits.

#### Appeal—Nonconflicting Evidence—Considered as Agreed Statement of Facts.

5. Where no substantial conflict exists in the evidence, the case will be considered on appeal as one based upon an agreed statement of facts and treated as one presenting for decision questions of law only.

#### Probate Proceedings—Wills—Construction.

6. A testator, at the time of making his will, was a member of two firms of G. & K. At the time of his death he was a member of a firm and a corporation of the same name. Among others, the will contained the provisions that ''each one of the employees of the firm of G. & K. who shall have been in the employ of the said firm one year or more previous to my decease'' should be entitled to receive $1,000. *Held*, that the testator did not use the expression ''firm'' in its technical sense, but as an equivalent of G. & K., the firm and corporation.

#### Same—Wills—Construction—''Employees.''

7. Where a testator provided in his will that all employees of a firm of which he was a member, who should have been in its employ for one year or more previous to his decease, should receive a specified sum, only those who were actually in such employ at the time of testator's death and had been continuously for one year immediately prior thereto, were entitled to take under this clause, and not those who at any time had served the house for one year but had left its employ prior to the death of the testator.

#### Same—Wills—Execution—Competency of Witnesses.

8. Under Civil Code, section 1727, providing that, where the subscribing witnesses to a will are competent at the time of attesting its execution, their subsequent incompetency does not prevent the probate of the will, and section 1729, providing that all gifts made in the will to a subscribing witness thereto are void, etc., a beneficiary under a will may be a competent subscribing witness; the question of his competency having reference in point of time to the date of the attestation of the will.

#### Same—Wills—Subscribing Witnesses—Beneficiaries.

9. One who was a necessary subscribing witness to a will cannot take as a beneficiary under it. (Civ. Code, sec. 1729.)

#### Same—Wills—Construction—''Employees.''

10. A person who, for labor performed for a mercantile firm in sewing hydraulic hose was paid by the piece and was not constantly engaged at such work, but only as occasion required, was not an ''em-

ployee'' in the sense in which that term was used in a will, made by a
member of the firm, providing that all employees who had been in its
employ for one year or more previous to testator's death should receive
a specified sum of money.

Same.

11.  Nor was a person entitled to take under the provision of the will
set out in the foregoing paragraph, who ceased to be a regular em-
ployee of the firm five years before the will was executed, but who
occasionally afterward helped in the store of the firm whenever his as-
sistance was needed, who made outside collections and was occasionally
sent to other parts of the state to transact odd matters of business,
when expenses and transportations were furnished him, and who later
became secretary and manager of a live stock company, in which the
firm was interested, at an annual salary of $2,000 besides expenses.

Same—Wills—Construction—Residuary Legatees.

12.  A testator in his will bequeathed to each employee who had been in
the employ of a firm, of which the testator was a member, for one year
or more previous to his death, $1,000.  Considerable bequests were also
made to ''the two daughters'' of a sister and to ''the son'' of another,
as also to ''the widow'' of a brother.  None of these legatees were
designated by name.  The residuary clause provided that all the re-
mainder of the estate should be divided pro-ratably between the bene-
ficiaries *named* in the will.  *Held*, that the employees entitled to take
under the former clause, although not designated specifically by name,
should also take their *pro rata* share under the clause disposing of the
residue of the estate.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

PROCEEDINGS by Jacob Klein, executor of the estate of Henry
Klein, deceased, and others, against R. A. Fraser and others, to
determine the persons entitled to distribution under the will of
decedent.  From an order determining the persons entitled to
distribution, and from an order denying a new trial of the issues,
plaintiffs appeal.  Modified.

*Mr. Albert I. Loeb,* for Appellants.

The policy of the law under the modern English statute of
wills and under statutes in most of the states of this country
is that where an attesting witness to a will was at the same time
a legatee or devisee, he should be competent as a witness to
prove the will, but the legacy or devise to him should be void.
(*Holdfast* v. *Dowsen,* 1 W. Black. 17; *Doe* v. *Mills,* 1 M. & Rob.
288, 42 Rev. Rep. 795; *Wigan* v. *Rowland,* 11 Hare, 157, 21 Eng.
L. & Eq. 132; *In re Trotter,* [1899] 1 Ch. 764; *Ryan* v. *Devereux,*

26 U. C. Q. B. 100.   See *Clark* v. *Hoskins*, 6 Conn. 106; *Fortune* v. *Buck*, 23 Conn. 1; *Elliot* v. *Brent*, 6 Mackey (D. C.), 98; *Jones* v. *Habersham*, 63 Ga. 146; *Harp* v. *Parr*, 168 Ill. 473, 48 N. E. 113; *Fisher* v. *Spence*, 150 Ill. 253, 41 Am. St. Rep. 360, 37 N. E. 314; *Hawkins* v. *Hawkins*, 54 Iowa, 445, 6 N. W. 699; *Finegan* v. *Theisen*, 92 Mich. 178, 52 N. W. 619; *High, Appellant*, 2 Doug. (Mich.) 528; *Rucker* v. *Lambdin*, 12 Smedes & M. 230; *Miltenberger* v. *Miltenberger*, 78 Mo. 27; *Grimm* v. *Tittman*, 113 Mo. 56, 20 S. W. 664; *Hodgman* v. *Kittredge*, 67 N. H. 254, 68 Am. St. Rep. 661, 32 Atl. 158; *Matter of Owen*, 48 App. Div. 507, 62 N. Y. Supp. 919; *Matter of Brown*, 31 Hun, 166, 66 How. Pr. 289; *Du Bois* v. *Brown*, 1 Dem. (N. Y.) 325; *Smith's Estate*, Tuck. (N. Y.) 83; *McDonough* v. *Loughlin*, 20 Barb. (N. Y.) 238; *Sharpsteen* v. *Tillou*, 3 Cow. (N. Y.) 653; *Jackson* v. *Denniston*, 4 Johns. (N. Y.) 311; *McLean* v. *Elliott*, 72 N. C. 70; *Boone* v. *Lewis*, 103 N. C. 40, 14 Am. St. Rep. 783, 9 S. E. 644; *Vrooman* v. *Powers*, 47 Ohio St. 194, 24 N. E. 267, 8 L. R. A. 39; *Nixon* v. *Armstrong*, 38 Tex. 296; *Fowler* v. *Stagner*, 55 Tex. 393; *Gamble* v. *Butchee*, 87 Tex. 643, 30 S. W. 861; *Clark* v. *Clark*, 54 Vt. 489; *Croft* v. *Croft*, 4 Gratt. (Va.) 103; *Clark* v. *Miller*, 65 Kan. 726, 68 Pac. 1071; Schouler on Wills, secs. 23, 357; Bigelow on Law of Wills, pp. 50, 104; Underhill on Wills, secs. 82, 193.)   It will be seen from the foregoing authorities that under the circumstances the bequest to Fraser cannot be maintained.

One who was not in the employ of Gans & Klein, either the firm or the corporation, at the time of the death of Henry Klein, could not take under the eleventh clause of the will.   (Underhill on Wills, sec. 604; 12 Encyclopedia of Laws of England, p. 683; *In re Beyon* v. *Grieve*, 53 L. J. Ch. 1165, 51 L. T. 116, 32 Week. Rep. 871; *Darlow* v. *Edwards*, 1 Hurl. & C. 547, 32 L. J. Ex. 51, 9 Jur., N. S., 336, 6 L. T. 905, 10 Week. Rep. 700—Ex. Ch.; *In re Marcus* v. *Marcus*, 56 L. J. Ch. 830, 57 L. T. 399.)   One who is engaged to render services in a particular transaction is not an "employee."   The word implies continued service, and excludes those employed for a single transaction.   (*Frick Co.* v.

*Norfolk etc. R. Co.*, 86 Fed. 725, 738, 32 C. C. A. 31 (citing *Louisville etc. R. Co.* v. *Wilson*, 138 U. S. 501, 11 Sup. Ct. 405, 34 L. Ed. 1023; *Clark* v. *Renninger*, 89 Md. 66, 42 Atl. 928, 929, 44 L. R. A. 278; 15 Cyc. 1021; *Chillcot* v. *Bromley*, 12 Ves. 104; *Thrupp* v. *Collett*, 26 Beav. 147; *Metcalf* v. *Sweeney*, 17 R. I. 213, 33 Am. St. Rep. 864, 21 Atl. 365.)

Englebrecht did his work as a contractor and not as an employee. Contractors who have entire control of the work to be done, and were in no way subject to the control or direction of the person with whom they contracted, while performing the work they contracted to do for them, are not employees. (*In re Cortland Mfg. Co.*, 45 N. Y. Supp. 630, 21 Misc. Rep. 227; *Farmer* v. *St. Croix P. Co.*, 117 Wis. 76, 98 Am. St. Rep. 914, 93 N. W. 830; *Lang* v. *Simmons*, 64 Wis. 525, 25 N. W. 650; *Campfield* v. *Lang*, 25 Fed. 128; *Lehigh C. & N. Co.* v. *Central R. Co.*, 29 N. J. Eq. 252.)

The death of Herman Gans in September, 1901, dissolved the partnership of three. This is an elementary principle of the law of partnership. There was neither in contemplation of law nor in fact a partnership of Gans & Klein, of three, as it existed in July, 1896, after the death of Herman Gans. (22 Am. & Eng. Ency. of Law, 199; *Louis* v. *Elfelt*, 89 Cal. 547, 26 Pac. 1095; Mont. Civ. Code, sec. 3290.) After September 3, 1901, when Louis Gans, Henry Klein and Alice M. Gans, the executrix of the will of Herman Gans, continued business in law and in fact, a new partnership was formed, and a new firm of Gans & Klein, consisting of three, Alice M. Gans, Louis Gans and Henry Klein, composing the same. (*Pitkin* v. *Pitkin*, 7 Conn. 314, 18 Am. Dec. 111; *Mattison* v. *Farnham*, 44 Minn. 95, 46 N. W. 347; *Hoard* v. *Clum*, 31 Minn. 186, 17 N. W. 275; *McGrath* v. *Cowen*, 57 Ohio St. 385, 49 N. E. 338; *Wilcox* v. *Derickson*, 168 Pa. St. 331, 31 Atl. 1080.)

On September 24, 1902, the then firm of Gans & Klein, consisting of three, conveyed all its assets to the corporation of Gans & Klein. On this date all partnerships of three were dead, both in law and as a fact. There never was a partnership of

three of Gans & Klein after September 24, 1902. The bequest was to the employees of the firm of Gans & Klein. In 1896 Henry Klein used the words "firm of Gans & Klein," as meaning the employees of the firm, whether the firm of two or the firm of three, as it then existed, and there not having been any employees of the firm of three at the date of his death, it can only now refer to those left in the employment of either one of the firms to which the will referred in 1896. As to meaning of "firm," see *Bolckow* v. *Foster*, 25 Grant's Ch. 476; *Ryder* v. *Wilcox*, 103 Mass. 28; *Duncan* v. *Tombeckbee Bank*, 4 Port. (Ala.) 184; *McCosker* v. *Bank*, 84 Md. 292, 35 Atl. 935, 936; *Stewart* v. *Katz*, 30 Md. 334. All words are to be understood according to their meaning at the time and place of writing them. (Code Civ. Proc., sec. 3136; *In re Pearsons*, 99 Cal. 34, 33 Pac. 751; Mont. Civ. Code, sec. 1771; *Swenson's Estate*, 55 Minn. 300, 56 N. W. 1115; *Quick* v. *Quick*, 21 N. J. Eq. 13; *In re March*, 27 Ch. Div. 166, 54 L. J. Ch. 143, 51 L. T. 380.) Words are presumed to be used in their ordinary sense. (Rood on Wills, 431, citing Wigram on Wills, 58; *Adams* v. *Jones* (1900), 176 Mass. 185, 57 N. E. 362; *Hoope's Appeal* (1869), 60 Pa. 220, 100 Am. Dec. 563; *Bedford's Appeal* (1861), 40 Pa. 18; *Edgerly* v. *Barker* (1891), 66 N. H. 434, 31 Atl. 900, 28 L. R. A. 328; *Lee* v. *Baird* (1903), 132 N. C. 755, 44 S. E. 605; *Brett* v. *Donaghe* (1903), 101 Va. 786, 45 S. E. 324.)

Technical terms are to be understood in their technical sense, (Rood on Wills, 432, citing: *Perrin* v. *Blake* (1771), Har. Law Tr. 489, 10 Eng. Rul. Cas. 689, Thomp. Cas. 1; *Hodgson* v. *Ambrose* (1780), 1 Doug. 337, Abbott, 688; *Miller* v. *Worrall* (1900), 62 N. J. Eq. 776, 90 Am. St. Rep. 480, 48 Atl. 586; *Leathers* v. *Gray* (1888), 101 N. C. 162, 9 Am. St. Rep. 30, 7 S. E. 657; *Keteltas* v. *Keteltas* (1878), 72 N. Y. 312, 28 Am. Rep. 155; *Sims* v. *Conger* (1860), 39 Miss. 231, 77 Am. Dec. 671; *Estate of Reinhardt* (1887), 74 Cal. 365, 368, 16 Pac. 13.)

The act of Henry Klein in creating the corporation of Gans & Klein *ipso facto* amounted to a revocation of the legacy to the employees of the firm of three, inasmuch as by that act he put

the firm of three out of existence. (*Lansing* v. *Haynes,* 95 Mich. 16, 35 Am. St. Rep. 545, 54 N. W. 699; *Baacke* v. *Baacke,* 50 Neb. 22, 69 N. W. 303.) A legacy or devise to a corporation or association will lapse where the beneficiary has ceased to exist before the death of the testator. (*In re Rymer,* [1895] 1 Ch. 19, 12 Rep. 22; *Fisk* v. *Attorney General,* L. R. 4 Eq. 521; *In re Ovey,* 29 Ch. Div. 560; *Neill's Estate* (Cal.), Myr. Prob. 79; *Crum* v. *Bliss,* 47 Conn. 592; *Brooks* v. *Belfast,* 90 Me. 318, 38 Atl. 222; *Merrill* v. *Hayden,* 86 Me. 133, 29 Atl. 949; *New Orleans* v. *Hardie,* 43 La. Ann. 251, 9 South. 12.)

The respondents are not entitled to interest. (*Estate of James,* 65 Cal. 25, 2 Pac. 494.)

Men know that their wills are not to take effect until they die, and they make them for the purpose of fixing the distribution of property from that moment. (*Applegate* v. *Smith,* 31 Mo. 167; *Campbell* v. *Rawden,* 18 N. Y. 412; *Walker* v. *Williamson,* 25 Ga. 549; *Morse* v. *MaCrum,* 22 Or. 236, 29 Pac. 615, 30 Pac. 73; *Canfield* v. *Bostwick,* 21 Conn. 550; *Gold* v. *Judson,* 21 Conn. 616; *Jette* v. *Picard,* 4 Or. 296; 1 Redfield on Wills, 7-9, 210; 1 Jarman on Wills, 286, 287.)

The executor has the right to appeal in this proceeding independent of the other appellants. (*In re Phillips' Estate,* 18 Mont. 311, 45 Pac. 222; *In re Davis' Estate,* 27 Mont. 240, 241, 70 Pac. 721.) An examination of the order appealed from will show that the estate is not in a condition for final distribution; that the assets have not been converted into money; that the accounts of the executor have not been settled, and the executor has the right to move for a new trial or appeal. (*State ex rel. Leyson* v. *District Court,* 26 Mont. 378, 68 Pac. 411; *Estate of Kelley,* 63 Cal. 106; *Estate of Mitchell,* 121 Cal. 391, 53 Pac. 810; *Estate of Murphy,* 145 Cal. 464, 78 Pac. 960; *In re Phillips' Estate,* 18 Mont. 311, 45 Pac. 222; *In re Davis' Estate,* 27 Mont. 240, 241, 70 Pac. 721; *In re Welch's Estate,* 106 Cal. 427, 58 Am. St. Rep. 188, 39 Pac. 805; *In re Smith's Estate,* 117 Cal. 505, 49 Pac. 456; *In re Heydenfeldt's Estate,* 117 Cal. 553, 49 Pac. 713.)

*Mr. Wm. T. Pigott*, for Respondents Fraser, Smith, McKusick, Hoepfner, Damon, Graiff, Merdian and Gans.

Fraser was not, at the time the will was made, in the class mentioned in the eleventh clause, and was therefore not at that time a legatee or interested as a beneficiary. The class so provided for had then no existence, and did not spring into being until Klein's death. He was, therefore, a competent witness to the will. (*Doe d. Hindson* v. *Hersey*, 4 Burn's Ecc. Law, 27; *Bograve* v. *Winder*, 2 Ves., Jr., 633; *Sears* v. *Dillingham*, 12 Mass. 357; 30 Am. & Eng. Ency. of Law, 2d ed., 604, and notes, 18 Am. & Eng. Ency. of Law, 2d ed., 737, 738, and cases cited in notes.) The interest that will disqualify an attesting witness must be present, certain, and vested at the time the will was made. (*In re Will's Estate*, 67 Minn. 335, 69 N. W. 1090; *Holt's Will*, 56 Minn. 33, 45 Am. St. Rep. 434, 57 N. W. 220, 22 L. R. A. 481.) Unless Fraser was interested as a legatee or devisee at the time the will was made, he was entitled to take under the eleventh clause.

Klein is conclusively presumed to have known the law, and to have ordered his affairs with reference to it. The courts must indulge the irrebuttable presumption that Klein was aware of section 1729 of the Civil Code. Knowing of the existence of that statute, Klein must also have known that if the class created by clause 11 embraced employees who had already served one year, Fraser, being an attesting witness, could not take under that clause. Did Klein intend to cut Fraser off from any possibility of receiving a legacy under that clause? The judicial expositor must put himself in the position of the testator at the time the will was made. (*In re Fair's Estate*, 132 Cal. 523, 84 Am. St. Rep. 70, 64 Pac. 1006.)

The distinction which differentiates Fraser's situation from that of one who is specifically named or mentioned in the will, is broad. If Fraser had been pointed out or mentioned as a legatee, then, of course, bequests to him would be void. This is illustrated in *Carr* v. *Smith*, 25 App. Div. 214, 49 N. Y. Supp.

351, and in *Matter of Brown,* 28 Misc. Rep. 273, 59 N. Y. Supp. 844. Klein, however, left the question of the identification of the legatees to the uncertainties of the future.

Appellants contend that such of these respondents as were actually employees of the corporation "Gans & Klein" at Helena at the time Klein died, and had been such employees for the year next before that day, cannot take under the eleventh clause, for the sole reason that the word "firm" appears before the words "of Gans and Klein."

Their position is that Klein intended employees of that concern or association "Gans & Klein" which, rigidly applying technical rules (*apices juris*) and definitions familiar only to members of the legal profession (and not to all of them), constituted a copartnership firm, should receive his bounty; and that he did not intend that employees (his daily associates for years) of the corporation or corporate firm "Gans & Klein" should receive anything under the eleventh clause.

In the interpretation of a will the cardinal rule is that the intention of the testator, as gathered from the whole instrument, must control, and, in ascertaining such intention, the relation of the testator to those asserting rights as beneficiaries, and the circumstances existing at the time the will was made, should be taken into consideration. (Civ. Code, secs. 1770, 1771, 1777, 1781, 1793, 1801; *Penny* v. *Christmas,* 7 Rob. (La.) 481; *Blackwell* v. *Blackwell,* 15 N. J. L. 386; *Edwards* v. *Bibb,* 43 Ala. 666.)

The word "firm" has not necessarily the exclusive meaning of "copartnership." It may, and often does, mean a corporation, or a joint stock company, or other concern, the members of which are jointly or commonly engaged in some business enterprise. The words "firm of Gans & Klein" used in the eleventh clause are, under the facts, neither more nor less than the words "Gans & Klein." The purpose was to identify. The word "firm" neither adds to nor subtracts from the force and effect which the eleventh clause would have after the elimination of that word. "Firm" is superfluous; it was used simply, but unnecessarily, as a means of identifying "Gans & Klein," in whose

employ the persons must be if they are to take under that clause. Klein attached no importance to the word "firm." He used it as a mere equivalent of "Gans & Klein."

The will speaks from the death of its maker, and employees of the corporation "Gans & Klein" were and are within the class created by the eleventh clause. The whole matter is reduced to a question of the identification of the persons who fall within the class of employees intended to be benefited by clause 11. These conclusions seem very clear, and should not need the support of cases adjudged. The principle of *Van Nostrand* v. *Board of Domestic Missions,* 59 N. J. Eq. 19, 44 Atl. 472, is applicable to some extent.

These respondents are entitled to interest at the rate of eight per centum yearly from November 12, 1904. The common-law rule will be unquestioned. Legacies begin to bear interest at the expiration of one year after the testator's death. Even in the absence of any statute on the subject, a general legacy is due and payable after one year from the testator's death, and from that time draws interest at the statutory rate. This is the rule even "where administration was prevented by contests of the will, or in regard to a right to administration." (*In re Williams' Estate,* 112 Cal. 521, 53 Am. St. Rep. 224, 44 Pac. 808.)

The case of *Welch* v. *Adams,* 152 Mass. 74, 25 N. E. 34, 9 L. R. A. 244, with notes on page 248, is instructive. Cases supporting the rule are collated in 18 American and English Encyclopedia of Law, 793. The statutory law in this state declares the same rule by sections 1831 and 1832 of the Civil Code, which are copies of sections 1368 and 1369 of the Civil Code of California.

*Mr. T. J. Walsh,* for Respondents Davis, Walsh, Curtis and Merkle, and *Mr. H. S. Hepner,* for Respondent Heiman.

The proposition that an executor has no right to take sides in a controversy between rival claimants for the estate on which he administers, and use it up in defeating the claims of the

rightful owners, is one so clearly founded in reason that the courts have been unanimous in denying to him any right to appeal, or otherwise complain of the judgment settling their claims or directing final distribution. This court held in *Dewar's Estate,* 10 Mont. 422, 25 Pac. 1025, that the executor had no right to appeal from an order of distribution. (See, also, *Estate of Wright,* 49 Cal. 550; *Bates* v. *Ryberg,* 40 Cal. 463; *Roach* v. *Coffey,* 73 Cal. 281, 14 Pac. 840; *In re Jessup's Estate,* 80 Cal. 625, 22 Pac. 260; *Estate of Marrey,* 65 Cal. 287, 3 Pac. 896; *Merrifield* v. *Longmire,* 66 Cal. 181, 4 Pac. 1176; *Goldtree* v. *Thompson,* 83 Cal. 422, 23 Pac. 383; *Jones* v. *Lamont,* 118 Cal. 503, 62 Am. St. Rep. 251, 50 Pac. 766; *Ryer* v. *Fletcher etc. Co.,* 126 Cal. 484, 58 Pac. 908; *McCabe* v. *Healy,* 138 Cal. 90, 70 Pac. 1008; *Thomas* v. *Hosselkus,* 137 Cal. 474, 70 Pac. 455.) The following cases are referred to for the purpose of showing that the rule obtains not only in the state from which we take our Practice Act as it applies to administration proceedings, but is founded in reason quite beyond particular statutory provisions. (*Merrick* v. *Kennedy,* 46 Neb. 264, 64 N. W. 989; *Bryant* v. *Thompson,* 128 N. Y. 426, 28 N. E. 522, 13 L. R. A. 745; *Schlegel* v. *Sisson,* 8 S. Dak. 476, 66 N. W. 1087; *In re Stilphen* (Me.), 60 Atl. 888.)

Sections 2840, 2841 and 2842 of the Code of Civil Procedure do not contemplate that the executor is to be a party to the proceedings. There is no reason why he should be. As said in *Goldtree* v. *Thompson, supra;* "Executors, * * * are, in their official capacity, indifferent persons, as between the real parties in interest." The "interest" in the estate which justifies one to come into the proceedings with those claiming "heirship" or "ownership" under the statute is clearly a property interest. The rule *noscitur a sociis* unquestionably applies. The executor, as such, has no interest in the estate, however much he may be interested in its administration.

It is said by appellants that the clause "eleventhly" is to be read as though the word "next" were inserted before the words "previous to my decease." To do so would be to take unwarrantable liberties with the instrument.

The authorities are all against the court's reading the word "next" into the will. The testator's "intention is to be ascertained (first and above all other considerations) from the words of the will." (Cassoday on Wills, secs. 613, 614; *Hamilton* v. *Boyles*, 1 Brev. 414; *Webster* v. *Morris*, 66 Wis. 366, 28 N. W. 353; *Dove* v. *Johnson*, 141 Mass. 287, 5 N. E. 520; *Ginter's Exrs.* v. *Shelton*, 102 Va. 185, 45 S. E. 892. See, also, *Metcalf* v. *Sweeney*, 17 R. I. 213, 33 Am. St. Rep. 864, 21 Atl. 364; *In re Becker*, 39 Misc. Rep. 756, 80 N. Y. Supp. 1115; 8 Chitty's Equity Index, 7745.) If Henry Klein had intended to restrict the provision of his will to those who were in the employ of Gans and Klein for one year next preceding his death, he would have used the word "next." (*In re Sharland*, [1896] L. R. 1 Ch. Div. 517.

The argument upon which the appellants base their claim is that a will is presumed to speak from the time of the death of the testator, when it refers to a class. But that rule has its principal application to classes like children or other relatives not subject to change in their relationship to the testator. (Schouler on Wills, 529 et seq.)

*Mr. John J. McHatton,* for Respondent Hardcastle.

It is our position that, under the will of Henry Klein, deceased, any person who had served said copartnership for one year or more preceding, or for one year or more subsequent, to the date of the making of the will, is a devisee or beneficiary thereunder. The testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations. The words of the will are to be taken in the ordinary, grammatical sense; and it is the office of the court to simply ascertain and declare what, in substance, is contained in the will—not to insert what has been omitted, or to omit what has been inserted. For the purpose of doing this, it may take into consideration the circumstances existing at the time the instrument was executed. (Civ. Code, secs. 1771, 1777, 1793, 2203; Code Civ. Proc., secs. 3134, 3133;

*Crapo* v. *Peirce*, 187 Mass. 141, 72 N. E. 935; *Mueller* v. *Buenger*, 184 Mo. 458, 105 Am. St. Rep. 541, 83 S. W. 458, 67 L. R. A. 648; *Sturgis* v. *Work*, 122 Ind. 134, 17 Am. St. Rep. 349, 22 N. E. 996; *Burke* v. *Lee*, 76 Va. 386; Schouler on Wills, secs. 465, 466, 467; *In re Walkerly's Estate*, 108 Cal. 627, 49 Am. St. Rep. 97, 41 Pac. 772; *In re Tompkins' Estate*, 132 Cal. 173, 64 Pac. 268; *In re Fair's Estate*, 132 Cal. 523, 84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000.) A bequest to a class includes all in existence at the death of the testator. (*Goodwin* v. *Goodwin*, 48 Ind. 584; *In re Charland*, [1896] 1 Ch. 517; Page on Wills, sec. 534.) In the construction of a will or in the application of its terms or provisions, reference is to be had to the circumstances which existed at the time the will was made and under which the testator understood himself to be, and the conditions brought to his mind. (*In re Pearson's Estate*, 99 Cal. 30, 33 Pac. 751.) The will is the law unto the court. (*Estate of McDevitt*, 95 Cal. 17, 30 Pac. 101.)

*Messrs. Galen & Mettler*, for Respondent Engelbrecht.

Engelbrecht, as the testimony shows, was hired and paid by piece work, and settlements were made with him periodically. The essence of the definition of employee, in section 2650 of the Civil Code, is the doing of something for the benefit of the employer, and not the method of payment, whether by the month, day or piece.

By section 2676, Civil Code, an employee is required to substantially comply with all the directions of his employer concerning the service on which he is now engaged; and by section 2683 it is provided that "an employee who has any business to transact on his own account, similar to that intrusted to him by his employer, must always give the latter preference." In this connection particular attention is directed to the statement of Engelbrecht upon the examination by counsel for appellants, "whenever I was called in, I had to do it."

By section 2721, Civil Code: "A servant is presumed to have been hired for such length of time as the parties adopt for the

estimation of wages. A hiring at a yearly rate is presumed to be for one year; a hiring at a daily rate for one day; a hiring by piece work, for no specified term." A servant is certainly an employee. (15 Cyc. 1033, note 60, citing: *White* v. *Alameda,* 124 Cal. 95, 56 Pac. 795.)

MR. JUSTICE SMITH delivered the opinion of the court.

This is an appeal from a so-called judgment of the district court of Lewis and Clark county, determining the ownership of the estate of Henry Klein, deceased, the interest of each respective claimant therein, and the persons entitled to distribution thereof, and also from an order denying a new trial of the issues.

No question of practice or of the propriety of the procedure followed by the district court has been raised by counsel, and none will be considered by this court.

Those portions of the will to be construed are as follows:

"Eleventhly. I give and bequeath the sum of one thousand dollars ($1,000) each, to each one of the employees of the firm of Gans & Klein, at Helena and Butte, Montana, and New York, state of New York, who shall have been in the employ of said firm one (1) year or more previous to my decease."

"Twenty-firstly. I give, bequeath, and devise all the rest, residue and remainder of my estate, real, personal and mixed, owned by me at the time of my death to be divided pro-ratably between the beneficiaries named in this my last will and testament."

After the admission of the will to probate in the district court, petitions were filed by certain persons, claiming to be legatees under the "eleventhly" clause of said will, praying for a partial distribution of the assets of the estate, and that each of them receive the $1,000 mentioned in the eleventh clause of the will, as one of the employees therein mentioned. Thereupon Jacob Klein, as executor, and also as a legatee under the will, petitioned the court, in accordance with section 2840 of the Code of Civil Procedure, for an order ascertaining and declaring the rights

of all persons to said estate, and all interests therein, and to whom distribution thereof should be made under the eleventh and twenty-first clauses thereof. Said petitioning claimants are named as follows: John Engelbrecht, Ernest Hardcastle (as assignee of Thomas Reitos and Oliver Recore), Merle M. Davis, Jos. R. Walsh, Millard C. Curtis, H. J. Merkle, M. L. Heiman, R. A. Fraser, Wilbur L. Smith, Sanford McKusick, Charles Hoepfner, Herbert W. Damon, J. O. Graiff, E. A. Merdian, and Joseph Gans.

The executor of the will and certain other persons who are specifically named as legatees therein, took issue with all of the claimants as to their right to share in the estate, and some claimants took issue with others. All of the issues raised are substantially the same, with the exception that it is specially urged that claimant R. A. Fraser cannot take under the will, for the reason that he was a subscribing witness thereto whose testimony was necessary to admit it to probate; there being but one other subscribing witness.

The following matters appear from the record to have been established:

(1) In the year 1866 Henry Klein and one Louis Gans formed a copartnership under the firm name and style of "Gans. & Klein."

(2) Some time later Herman Gans was taken into the firm, which continued to do business under the name of Gans & Klein. Herman Gans, however, did not acquire an interest in all of the business theretofore conducted by Henry Klein and Louis Gans; a part thereof being retained by them, the part so retained being still operated under the name of Gans & Klein, making two copartnerships of Gans & Klein, one composed of Henry Klein, Louis Gans, and Herman Gans, and the other composed of Henry Klein and Louis Gans.

(3) The firm of Gans & Klein, consisting of three persons, was engaged principally in the clothing business in Helena and Butte, with an office in New York City. The firm composed of two persons also had business interests in Helena and New York

City. On August 26, 1903, the Butte business was sold out, and on or before that date all Butte employees left the employ of Gans & Klein.

(4) On July 1, 1896, Henry Klein made his will.

(5) On September 3, 1901, Herman Gans died, and thereafter his widow, Alice M. Gans, represented his interest in Gans & Klein until September 24, 1902, when Louis Gans, Henry Klein, and Alice M. Gans organized a corporation, called "Gans & Klein," for the purpose of carrying on the business of general merchandising in Montana and New York. On September 9, 1902, a corporation named "Gans & Klein Investment Company," organized by Louis Gans, Henry Klein, and Alice M. Gans, had taken over the real estate and investment business that had belonged to the partnership of three.

(6) Henry Klein died November 12, 1903.

On May 18, 1906, the district court found, among other things, that the claimants above named were beneficiaries, legatees, and distributees under the eleventh clause of the will, and that each of them is entitled to receive $1,000, with interest at eight per cent from November 12, 1904; that each of them is also a residuary legatee under clause 21 of the will, and entitled to receive from the estate, after payment of the general bequests and all debts and expenses of administration, two three hundred and thirty-second parts of the residue of the estate, and entered a judgment or order accordingly. By the same judgment or order it was adjudged that certain other beneficiaries named in said will, to-wit, the Associated Charities, Hebrew Congregation Emanu-el, Hebrew Union College, St. Peter's Hospital, and the Montana Wesleyan University, should be paid their legacies and *pro rata* shares of the residue of the estate.

It appears that on January 6, 1906, the court had entered a judgment or order favorably determining the rights of certain other legatees, to-wit, Jacob Klein, Rosa Asch, Harry M. Klein, Martha Kahn, Samuel Block, Julius S. Klein, Milton Klein, Susman Klein, Sigmund Klein, Herman Kohn, Carl Greenhood, and Henry Greenhood, and on January 11, 1906, made its judg-

ment or order favorably determining the rights of one Jacob Herman to a share of said estate.

On July 9, 1906, the executor and the last-named legatees (with the exception of Herman) made a motion for a new trial of the issues found in favor of Smith, McKusick, Hoepfner, Damon, Graiff, Gans, Merdian, Fraser, Heiman, Reitos, Recore, Merkle, Curtis, Walsh, Davis, and Engelbrecht, by the judgment or order of May 18, 1906, which motion was overruled, whereupon they appealed to this court from the order denying said motion and also from so much of the judgment or order of May 18th as related to the last-named persons, serving notice of such appeal on counsel for all persons in whose favor the judgment or order of May 18th was entered, including St. Peter's Hospital, Montana Wesleyan University, Associated Charities, Hebrew Union College, Union of American Hebrew Congregations, the Hebrew Congregation Emanu-el of Helena, and the clerk of the district court; also upon counsel for Peter Hardenstein and J. H. Freezer, whose claims were disallowed by the district court, Ernest Hardcastle, assignee of Reitos and Recore, and Jacob Herman, whose claim was allowed January 11th. Said notice of appeal was also directed to each of said parties and to their counsel, by name.

In arriving at a conclusion in this case, we have been somewhat embarrassed by the antagonistic positions taken by some of the respondents with relation to each other.

Regarding the contention that this court cannot review the order refusing to grant a new trial, because of the complications that would arise in the district court, should a new trial of a part of the issues be ordered, it is sufficient to say that section 2841 of the Code of Civil Procedure expressly gives the right to move for a new trial in these proceedings and provides for an appeal to this court. (See, also, *In re Davis' Estate*, 27 Mont. 235, 70 Pac. 721.)

Again, it is urged that appellants cannot appeal from a part of a "judgment." Paragraph 3 of section 1722 of the Code of Civil Procedure, as amended by Laws of 1899, page 146, relating

to appeals in probate proceedings, provides that an appeal may be taken from a "judgment or order" of a district court "directing the distribution    *   *   *    of an estate or any part thereof, or the payment of a   *   *   *   legacy or distributive share."

In *Re Estate of Tuohy*, 23 Mont. 305, 58 Pac. 722, this court held that the statutory determinations, called "judgments or orders," defined in subdivision 3, section 1722, of the Code of Civil Procedure, were not final judgments, but simply "judgments or orders" in probate proceedings. (See, also, *In re Kelly's Estate*, 31 Mont. 356, 78 Pac. 579, 79 Pac. 244.)

On October 2, 1906, respondents moved this court to dismiss the appeal from the "judgment" herein, on the ground that it is not an appeal from the whole judgment, but only from a part thereof, and no appeal lies from a part of a judgment. The motion to dismiss was submitted on exhaustive briefs of counsel, and was, on November 2, 1906, denied; and that is the law of this case on the questions raised by the motion.

On September 21, 1906, certain of these respondents moved this court to affirm the order of the district court denying appellants' motion for a new trial, for the reason that neither the notice of intention to move for a new trial nor the statement on motion for a new trial was served upon certain other respondents, and because the notice of intention is joint and several, and the executor of the will is one of the moving parties. It was urged by the moving respondents in their brief on the motion, and is again urged in respondents' brief and argument in the case in chief, that the executor had no right of appeal. The motion to affirm was denied by this court on November 2, 1906, and the law of the case was then settled so far as the reasons urged in the motion are concerned. Let it be noted, however, that these rulings are confined to this action, which is prosecuted under the provisions of sections 2840, 2841 and 2842, of the Code of Civil Procedure.

We have carefully examined all of the testimony as found in the record, and find there is no substantial conflict in the evi-

dence. Only questions of law are, therefore, presented, and we shall act upon it as upon an agreed statement of facts, as counsel have invited us to do in their respective briefs. (*Emerson* v. *Eldorado Ditch Co.*, 18 Mont. 247, 44 Pac. 969; *Conklin* v. *Cullen*, 25 Mont. 214, 64 Pac. 502.)

The following statement shows the *status* of the respective claimants under the will with regard to time of service as employees of Gans & Klein:

(1) Jos. R. Walsh was an employee of Gans & Klein in Butte from March, 1900, to June, 1903.

(2) Merle M. Davis was an employee at Butte from September, 1901, to June 6, 1903.

(3) M. C. Curtis was an employee at Butte from July 28, 1900, to April 14, 1903.

(4) M. L. Heiman was an employee at Butte from April, 1893, to August 26, 1903, when the Butte business was discontinued.

(5) Thos. Reitos was a tailor at Butte from 1898 to August, 1903. He was under a salary, and we shall assume that he was an employee.

(6) Oliver Recore was an employee at Butte from October, 1898, to August 1903.

(7) H. J. Merkle was an employee at Butte from July 1, 1900, to August 1, 1902.

(8) R. A. Fraser was an employee of Gans & Klein, a partnership of two, from February 9, 1895, to the day of Henry Klein's death. He was also an employee of the partnership of three, and of the corporation "Gans & Klein."

(9) Wilbur L. Smith, Sanford McKusick, Chas. Hoepfner, and J. O. Graiff were employees of Gans & Klein, a partnership of three, for more than one year prior to Herman Gans' death, continued during the time Alice M. Gans represented her husband's estate, and remained in the employ of the corporation up to the time of Henry Klein's death.

(10) Herbert W. Damon was an employee at Helena from July 3, 1901, to the time of Henry Klein's death.

(11) E. A. Merdian was an employee at New York of the two partnerships and the corporation from prior to 1895 to the time of Henry Klein's death.

The cases of Joseph Gans and John Engelbrecht will be considered separately. We shall first construe the eleventh clause of the will, and later the twenty-first clause.

We hold that Henry Klein intended to reward those employees of the business in which he was engaged under the name of Gans & Klein, who should be in the employ of either the copartnership or corporation of Gans & Klein at the time of his death, and who had been in such employ for one year immediately prior thereto. He was a layman, and did not use the word "firm" in its technical legal sense. "A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full intent, it must have effect as far as possible." (Civ. Code, sec. 1770.)

"In cases of uncertainty arising upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations." (Civ. Code, sec. 1771.)

"The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained." (Civ. Code, sec. 1777.)

"Technical words are not necessary to give effect to any species of disposition by a will." (Civ. Code, sec. 1781.)

"When applying a will it is found that there is an imperfect description, or that no person or property exactly answers the description, mistakes and omissions must be corrected, if the error appears from the context of the will or from extrinsic evidence; but evidence of the declarations of the testator as to his intentions cannot be received." (Civ. Code, sec. 1793.)

"A condition precedent in a will is to be deemed performed when the testator's intention has been substantially, though not literally, complied with." (Civ. Code, sec. 1801.)

In *Penny* v. *Christmas*, 7 Rob. (La.) 481, the court said, in relation to a will: "The language must be understood in its ordinary, popular significance."

The supreme court of Alabama, in the case of *Edwards* v. *Bibb*, 43 Ala. 666, declared: "The construction of words in a will is much less technical than the use of the same words in a deed. * * * In a deed, the words govern the intention; in a will, the intention governs the words."

Our Civil Code, section 2209, employs the phrase "ordinary and popular" in laying down a rule for the construction of contracts. In arriving at a conclusion as to the ordinary and popular meaning of the word "firm," we naturally first consult the standard dictionaries. Webster defines it thus: "The name, title, or style, under which a company transact business; hence a partnership or house; as the firm of Hope & Co." The Century Dictionary declares a "firm" to be: "A partnership or association of two or more persons for carrying on a business; a commercial house; a concern; also the name or title under which associated persons transact business." Nuttall's Standard Dictionary thus defines the word "firm": "Partnership or commercial house; or the name or title under which a company transact business."

It is admitted that Klein was a member of two firms of Gans & Klein, and yet in this eleventh clause he speaks only of the "firm of Gans & Klein." He evidently intended to include employees of both firms, and yet he used the singular "firm." If this court is to carry out the intention of Henry Klein, which it must, it cannot give to the word "firm" the restricted meaning contended for by appellants. It is apparent, from a reading of the whole will, that he used the word "firm" as an equivalent for "Gans & Klein."

When the will was made there was no corporation of Gans & Klein. The concern of which he was a member and part owner was a copartnership. After the death of Herman Gans it still continued to be known as Gans & Klein. It was incorporated as "Gans & Klein." Many of the employees remained the same

as before the incorporation, yet he never changed his will so as to include the employees of the new concern. His evident purpose was to reward those of his employees who by their ability and integrity had assisted him in carrying on his business, those men with whom he came into daily association in the Helena store, and those others to whom he had intrusted the conduct of his affairs elsewhere.

It is fair to assume that at the time of making his will he had no notion as to how long he would continue to live. In order, therefore, to identify those whom he intended to reward for faithful service, and to limit his bounty to those who were steadfast in their allegiance to Gans & Klein, he used the expression "previous to my decease." We think it would be unreasonable to presume that he intended to leave a legacy to any employee who had been in the employ of Gans & Klein for one year or more at any time previous to his death. If he did, why did he single out Jacob Herman, and designate him as a former employee of Gans & Klein? In the fourteenth clause of his will he bequeathed $1,000 to Jacob Herman by name.

Henry Klein, at the time of making his will, was a widower, without children. He had been in the mercantile business for thirty years. It was his habit to spend the greater part of his time in the Helena store where he was surrounded by his employees, many of whom had been with him for years. He took no part in the actual management of the business. He sold goods at times. He was not very well informed as to the general running conduct of the business for a year or two prior to his death, on account of failing health; but before that time he was decidedly active and well-informed. Fraser testified: "The firm did not make many changes in its employees. They generally held on to their men for years. Changes were decidedly infrequent." There was no change in the conduct or style of the business consequent upon the death of Herman Gans, or after the incorporation. The same persons who owned the partnership assets formed the corporation. No change was made with reference to the employees. The corporation continued to

use the stationery and most of the account-books of the copartnership. They continued to advertise in the same manner as before. No notice was given to employees or creditors that the firm had incorporated, and goods were billed to them in the same way. There was no formal change of possession made of the goods, although a bill of sale was given by the old concern to the corporation. In effect the business was conducted at the same place and by the same persons as before the incorporation.

It is to be noted that the bequests provided were not to be made out of the partnership property. Therefore it is fair to presume that, in using the word "firm," he had no technical reference to the copartnership.

By the third clause of his will Klein directed that his interest in the "copartnership" of Gans & Klein at Helena and Butte, also his interest in the "firm" of Martin, Gans & Klein at Lewis and Clark county, and all other mercantile interests of his should be continued for a period of not less than five years after his death. Is it not fair to presume that he afterward took occasion to put these "interests" in better shape for continuation by forming a corporation for that purpose?

We think his intent to provide legacies for certain employees of the concern or business of Gans & Klein is apparent from the terms of the will itself, and we have therefore given no consideration to those remarks of his, made after the will was executed, that tend to show that he sometimes referred to the corporation as a firm. The case of *Van Nostrand* v. *Reformed Church in America,* 59 N. J. Eq. 19, 44 Atl. 472, however, seems to be authority for the contention that these declarations were competent.

The testimony shows that on July 1, 1896, when Klein made his will, there had been more than one hundred employees of Gans & Klein who were each with the partnership of three more than one year at different times. At the time of making his will, Henry Klein was looking to the future. He knew, of course, that in the conduct of the business some of the employees might prove derelict, some might die before he did, and others

might sever their connection with the house, voluntarily or involuntarily. We are of the opinion that it was not his design to bestow bounties upon *all* his employees who at *any* time had served the house for one year, whether their relations had been terminated by him or them. In order to hold that such was his intention we must assume that, even if some employee had become an embezzler from the concern, such person would still take under the will, provided he had at any time served them for one year continuously. Such a construction would be at variance with those sentiments and motives that direct and actuate men in the conduct of their affairs, and therefore unreasonable. Indeed, it would nullify the very spirit of clause 11, which was inserted in the will by Klein for the purpose of rewarding faithfulness.

It is contended by the Butte respondents that this court has no authority to supply words omitted from the will, and this is undoubtedly correct. It is not necessary to insert the word "next" before the word "previous" to arrive at the conclusion reached by us. On the contrary, we should be obliged to reject the words "previous to my decease" in order to arrive at any other or different result. Henry Klein evidently attached some significance to the words last quoted, and it is for this court to ascertain, if possible, what that significance was—not to ignore the language. Of course, they could not be in his employ after his decease, and, had he intended to bestow a legacy on all employees who had at any time worked for the concern one year, he would undoubtedly have stopped with the phrase "one year or more." It seems clear to us that the words "previous to my decease" mean something in this will; that they are words of limitation, and were so employed by the testator. The cases cited by the learned counsel for the Butte employees are not in point, as no one of them has reference to a will bearing these words of limitation.

We therefore hold that every employee of either the copartnership or the corporation of Gans & Klein, who was actually in such employ at the time of Henry Klein's death and had

been continuously for one year immediately prior thereto, was, if laboring under no disqualification, competent to take under the eleventh clause of the will, and that no employee not actually in such employ at that time was intended to, or can, take. The result to these respondents is that Wilbur L. Smith, Sanford McKusick, Charles Hoepfner, Herbert W. Damon, J. O. Graiff, and E. A. Merdian take under clause 11, and Merle M. Davis, Jos. R. Walsh, Millard C. Curtis, H. J. Merkle, M. L. Heiman, and Ernest Hardcastle, as assignee of Thomas Reitos and Oliver Recore, do not.

R. A. Fraser was an employee of Gans & Klein, a partnership of two, at the time of and for many years prior to Henry Klein's death, and he therefore takes as a beneficiary under clause 11, provided he is not disqualified by reason of being a necessary witness to the will.

Section 1729 of the Civil Code is as follows: "Sec. 1729. All beneficial devises, legacies, and gifts whatever, made or given in any will to a subscribing witness thereto, are void, unless there are two other competent subscribing witnesses to the same; but a mere charge on the estate of the testator for the payment of debts does not prevent his creditors from being competent witnesses to his will."

Section 1727 of the Civil Code reads as follows: "Sec. 1727. If the subscribing witnesses to a will are competent at the time of attesting its execution, their subsequent incompetency, from whatever cause it may arise, does not prevent the probate and allowance of the will, if it is otherwise satisfactorily proved."

By the common law of England, after the conquest, no estate, with a few minor exceptions, could be disposed of by testament. The statute of wills (Stats. 32 Henry VIII, c. 1) provided for the disposition of real property by will. The construction placed upon this statute by the courts was so loose that innumerable frauds and perjuries crept into practice; to remedy which the statute of frauds and perjuries (Stats. 29 Car. II, c. 3) was enacted, providing, among other things, that a will should be subscribed in the presence of the testator, by three or four

credible witnesses.   The courts held that *credible* witnesses meant *competent* witnesses.   Under this statute it was held that a legatee named in the will was not a competent witness to its execution because of his interest, and many wills failed of proof by reason of such decision.   This construction was so alarming that Stats. 25 George II, chapter 6, was enacted, which restored both the competency and credit of such legatee, by declaring void all legacies given to witnesses, and thereby removing all possibility of their interest affecting their testimony.   (1 Cooley's Blackstone, p. 581.)

Chief Justice Cassoday, of the supreme court of Wisconsin, who was for many years a lecturer on "Wills" in the law department of the University of Wisconsin, and whose reputation as a jurist of ability is established, says (page 71 of his work on Wills) : "At common law, no person could give testimony in any controversy in which he himself had any pecuniary interest, however slight.   This, prior to Stats. 25 George II, chapter 6, precluded and rendered incompetent to become a subscribing witness to a will, every person who would take any beneficial interest under the will."   Section 1729 of our Civil Code is a codification of the principle embodied in the statute last mentioned, extending the safeguard, moreover, to "all beneficial devises, legacies, and gifts whatever."

Let it be remembered that these are statutes of frauds, to prevent frauds and perjuries on the part of the attesting witnesses to a will.   The competency must exist at the time of attestation; section 1729 providing that *subsequent* incompetency shall not prevent the allowance of the will.   (See, also, Page on Wills, sec. 363; *In re Sullivan's Will,* 114 Mich. 189, 72 N. W. 135; *In re Holt's Will,* 56 Minn. 33, 45 Am. St. Rep. 434, 57 N. W. 219, 22 L. R. A. 481.)

In the case of *Doe d. Hindson* v. *Hersey,* 4 Burn's Ecc. Law, 27, the inquiry arose whether the credibility of the witness was to exist at the period of the attesting act or of the judicial inquiry into its sufficiency.   Lord Camden held to the former

hypothesis, but was overruled by a majority of the court. Mr. Jarman, in his work on Wills, says that the doctrine contended for by this distinguished judge seems eventually to have prevailed, and is evidently more reasonable than the alternative rule. (1 Jarman on Wills, p. 190; also, Schouler on Wills, secs. 23, 350-353; *Brograve* v. *Winder*, 2 Ves. Jr. 634.)

In *Re Will of Lyon*, 96 Wis. 339, 65 Am. St. Rep. 52, 71 N. W. 362, the supreme court said: ''She was competent to testify to the facts at the time the will was executed, and that satisfies the universal test.''

It is true, of course, that the actual testimony of the witness by word of mouth is taken when the will is offered for probate, and, if the witness is alive and within the jurisdiction, he should be produced. He may stultify himself by testifying that the facts set forth in his attestation certificate are not true; but Lord Mansfield once said that a man who would do so ought to be placed in the pillory rather than in the witness box.

We decide, then, that the question of Fraser's competency as a subscribing witness has reference, in point of time, to July 1, 1896, when he attested the will.

Was the devise to him of such a nature as would have made him an incompetent witness under the statute of frauds, 29 Car. II? Does section 1729 of the Civil Code operate to deprive him of his legacy? If Henry Klein had died the day after the execution of his will, Fraser, if not a subscribing witness thereto, would have taken his legacy, because he had been in the employ of Gans & Klein for more than one year immediately prior to that date.

In the case of *Holdfast* v. *Dowsing*, 2 Strange, 1253, the court held that where a devise of twenty pounds was given to Elizabeth, the wife of John Hailes, who was a witness to the will, the said John was not a credible witness, within the intent of the statute of frauds, to prove the fact. The court said: ''It was objected that nothing vests till the death of the devisor, and therefore at the time of the attestation he had no interest. But

the answer is, that he was then under the temptation to commit a fraud, and that is what the Parliament intended to guard against."

In the *Case. of Trinitarian Congregational Church & Society*, 91 Me. 416, 40 Atl. 325, the court held that where one Rogers left $100 and certain personal property to one Folsom, and. in case Folsom died previous to the testator, then to one Agnes T. Hooper, and Folsom did so die, Agnes, who was a subscribing witness to the will, could not take the devise. The statutes of Maine, upon which the case was decided, are substantially like our own. The court said: "While she (Agnes) did not take an absolute, certain interest under the will, it would have become absolute and certain in an event which might happen. * * * The true test is whether the will itself conferred, directly or conditionally, a beneficial interest upon the witness. By this will Agnes T. Hooper was to receive a pecuniary benefit upon the happening of an event which might happen, and had the interest and hope, at the time of the attestation, which such provision held out, to sustain the will. * * * If the will provides a pecuniary benefit to the attesting witness, though dependent upon the happening of an event which may happen, he has a beneficial interest under it, in contemplation of law; and if the subsequent event upon which the interest depends does not happen, that fact does not relate back and restore competency. It is important that the safeguards which the law has thrown around the execution of wills should not be withdrawn or weakened; and to that end a will which provides a pecuniary benefit, absolute or contingent, to a legatee, should not be witnessed by such legatee. He is interested, and therefore not credible or competent. Some of the decisions appear to have gone to the verge of the law in the matter of attestation, in the effort to sustain wills. But we have found no case, nor been cited to any, in which a legatee, upon a contingency such as this, has been held a competent attesting witness. We regard it unwise, and inconsistent with sound public policy and the rights of interested parties, to further extend the exceptions to the common-law

rule. The result is that Agnes T. Hooper was not a legally competent attesting witness, and the will must be disallowed."

We decide that Fraser cannot take his devise under the will, for the reason that he was a necessary subscribing witness to the same.

We shall consider the claims of John Engelbrecht and Joseph Gans together. In the case of Engelbrecht we find that he sewed hydraulic hose for Gans & Klein. He was paid by the yard. He worked for them a number of years prior to 1901. With the exception of some small pieces that he did not put down in his book, he sewed no hose between July 3d and December, 1901. All the work he did in 1902 was performed between May 12th and August 6th. In 1903 he began work on January 28th, and the last work he did was on May 15th. He testifies: "It was the habit of Gans & Klein, the firm, prior to 1901 before the death of Herman Gans, to figure up the amount of yards that I sewed, and then pay me so much per yard, or post it to my credit on the books, and give me credit for the amount that was coming to me. I drew money whenever I wanted some, but my right to draw money depended entirely upon the number of yards that I sewed. When I sewed hose in 1902, I settled up with the bookkeeper at that time. Herman Gans figured up the amount that was due me when he was there. After the death of Herman Gans the bookkeeper did, and Charles Hoepfner he had general charge of the hose. Charles Hoepfner and the bookkeeper then would check up with me the number of yards that I had sewed, and that would be turned over in the office, and I would be credited with so much money, an amount equivalent to so many yards at the price per yard, whether it was single, double, or triple stitch. That was done also in 1903. I never drew a monthly salary from the firm, so much per month, nor a weekly salary of so much per week."

Joseph Gans was a brother of Louis Gans, Henry Klein's partner. For eighteen years prior to 1891 he was either a clerk or manager of Gans & Klein's Helena store. In 1891 he ceased to be a regular salesman, but, as he says, was around there at

times, and helped them sell anything whenever they wanted or needed him. He afterward made outside collections for the house, and was occasionally sent to other parts of the state to transact odd matters of business pertaining to their ranches or stock. When so sent out, they paid his expenses and furnished him a railway mileage book. In 1892 he went to the state of Wyoming to attend to the stock interests of Gans & Klein. He became secretary and manager of the National Sheep & Land Company, a corporation in which Gans & Klein were interested. As secretary of said corporation he received a salary of $2,000 per annum, besides his expenses. From the time he retired from the mercantile business he says he was never regularly employed by Gans & Klein. In 1903 he had a conversation with Louis Gans and Henry Klein. In this conversation Henry Klein said: "Well, Louis, what are you going to give him? You settle it up, and I am satisfied. I will pay it." But they paid him nothing. It seems that Louis objected to making the settlement because Joseph was his brother, and Klein refused or neglected to make any settlement. Joseph Gans himself testified: "They didn't pay me anything for the special services that I performed. * * * Neither Louis Gans or Herman Gans, or Henry Klein ever paid me anything for those services, and I have never received anything for it."

The foregoing statement is taken from the testimony of the claimant himself. It is very doubtful whether the services he claims to have performed were rendered to Gans & Klein. It seems clear that any service rendered was not as an employee of Gans & Klein at *Helena*. Henry Klein appears never to have recognized any obligation that called for remuneration. In fact, it is apparent, from their own testimony, that neither Engelbrecht nor Joseph Gans was an employee of Gans & Klein.

The word "employee" imports some sort of continuous service. Mr. Justice Brewer, in the case of *Louisville etc. R. Co.* v. *Wilson*, 138 U. S. 501, 11 Sup. Ct. 407, 34 L. Ed. 1023, says: "The terms 'officers' and 'employees' both alike refer to those in regular and continual service. Within the ordinary accepta-

tion of the terms, one who is engaged to render service in a particular transaction is neither an officer nor an employee. They imply continuity of service, and exclude those employed for a special and single transaction. An attorney of an individual, retained for a single suit, is not his employee. It is true, he has engaged to render services; but his engagement is rather that of a contractor than that of an employee. The services of appellee, therefore, did not come within the order appointing the receiver.''

In Schouler on Wills, section 566a, it is said: ''A devise or legacy is not unfrequently given to a servant or servants of the testator. Where a gift is made to such as may answer that description, and without identifying particular persons as the objects of one's bounty, courts incline to limit its benefit, if not to strict 'household' servants, at least to such as spend their whole time in the master's employ; not extending the gift, in its scope, to persons who come back and forth for casual employment and work also for others.''

Again, in Page on Wills, we find this language: ''A devise to 'such persons as shall be in my employ at the time of my death' does not include persons who were hired a day or so at a time to assist regular servants.'' (Section 534.) ''Gifts to servants, unexplained, include only those directly and regularly employed.'' (Rood on Wills, sec. 460.) See, also, *Metcalf* v. *Sweeney,* 17 R. I. 213, 33 Am. St. Rep. 864, 21 Atl. 364, where the court held that a woman who worked thirty-seven days in 1885, one hundred and thirty-one in 1886, sixty-five and one-half in 1887, thirty-four in 1888, and thirty-five in 1889, as a laundress, housecleaner, and the like, was not a servant in the employ of a testator at his death. The court said: ''It seems to us that the services rendered by her lack the continuity, the fixity, and permanence of relation, that are needed to give validity to her claim.''

We hold that neither John Engelbrecht nor Joseph Gans can take a legacy under clause 11 of the will, as neither was an ''employee'' of Gans & Klein.

Coming, now, to the twenty-first clause of his will, we find that the testator directed that "all the rest, residue, and remainder of my estate * * * be divided pro-ratably between the beneficiaries named in this my last will and testament."

It may be argued that Klein intended to reward his employees by giving each $1,000 and nothing more, dividing the balance of the estate among his relatives. There is some force in this suggestion; but the answer is that we must determine his intention from what he said in his will. We are not allowed to indulge in conjectures based upon probabilities. It is urged that these employees cannot take any portion of the residuary estate, because they are not "named" in the will. Jacob Herman was a former employee, and he is named. By the sixth clause, $10,000 each was given to "the two daughters of" a deceased sister; by clause 7, $5,000 was given to "the son" of a deceased sister; and by clause 9, $5,000 is given to "the widow" of a deceased brother. None of these legatees are named; that is, called by name. If it is necessary that a legatee should actually be called by name in order to take under paragraph 21, then these last-mentioned relatives cannot get the benefit of that clause, while Henry Greenhood, Carl Greenhood, Leopold Cohn, and Herman Cohn, second cousins, mentioned in paragraphs 15, 16 and 17, can.

We hold that all who take legacies under clause 11 also take pro-ratably under clause 21.

We have carefully considered the able briefs of counsel in this matter and conclude that this opinion covers all of the points respectively raised herein. Any question not directly decided is deemed to be incidentally settled in passing upon the main questions considered. As appellants have abandoned the question of interest, we shall allow the same, as did the district court.

The cause is remanded to the district court of Lewis and Clark county, with instructions to modify the order of May 18, 1906, by disallowing and dismissing the claims of R. A. Fraser, Joseph Gans, Ernest Hardcastle (as assignee of Thos. Reitos and Oliver Recore), Merle M. Davis, Jos. R. Walsh, Millard C. Curtis, H. J. Merkle, M. L. Heiman, and John Engelbrecht.

The court is directed to readjust the orders heretofore made, by changing the ratio of distribution of the residuary estate as therein fixed so as to conform to this opinion, and properly distribute said residue in accordance with the terms of the will as herein construed.

The costs of this appeal shall be paid out of the estate.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Respondent Fraser's petition for rehearing denied March 6, 1907.